[Sac. No. 894.   Department Two.—February 21, 1902.]

HUGH GLASSELL et al., Appellants, v. ROSS HANSEN et al., Respondents.

135 547
s149 512
149 514

UNITED STATES PATENT—BOUNDARY UPON RIVER—STATE PATENT OF ISLAND—ACCRETIONS.—A United States patent having the Sacramento River for its eastern boundary does not entitle the owner to any accretions of land to an island which springs up in the middle of the river and grows toward the patented land. Such island, with the accumulations, belongs to the state, and a state patentee of the island is entitled to all accretions made thereto.

ID.—EJECTMENT—RIVER BANK, AND ACCRETIONS TO ISLAND—JUDGMENT FOR DEFENDANTS—FINDINGS—ERROR AS TO RIVER BANK.—In an action of ejectment, by plaintiffs deraigning title under the United States patent, to recover the river bank and the accretions to the island on the side toward the plaintiffs' land, against defendants deraigning title under the state patent of the island, where the court failed to find title in the plaintiff in the river bank, and that defendant was never in possession thereof, but found wholly against plaintiffs' title or right of possession of any part of the lands described in the complaint, and rendered judgment wholly in favor of the defendants, the judgment, though right as to the accretions, must be reversed upon appeal, and cannot be affirmed on the ground that the evidence shows that the defendants were never in possession of the river bank.

ID.—RES ADJUDICATA.—If the erroneous finding and judgment were allowed to stand, they would be res adjudicata against plaintiffs' right to the river bank, and would be a bar to another action by the same plaintiffs as to the same land in the same right.

APPEAL from a judgment of the Superior Court of Solano County and from an order denying a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion.

Smith, McNutt & Hannon, George A. Lamont, and Frank R. Devlin, for Appellants.

Bruner & Brothers, and Freeman & Bates, for Respondents.

COOPER, C.—Action in ejectment. Defendants had judgment, and plaintiffs appeal from the judgment and order denying their motion for a new trial.

The plaintiffs deraigned title through a United States patent, issued to John Bidwell in 1866, to a tract of land, described in said patent, on the western bank of the Sacramento River, having said river for its eastern boundary. This patent was founded on a Mexican land grant, made in November, 1844, purporting to grant a tract of land containing four square leagues, known as Ulpinos, duly and finally confirmed by the United States courts. Sacramento River is, and was at all times named herein, a navigable stream. There is no question but that the patent conveyed the land therein described, having for its eastern boundary the western bank of said river at ordinary high-water mark.

The main controversy here is as to about one hundred and forty acres of land formed by accretions in the said river, mostly after the issuance of the patent. The facts cannot be more fully and concisely stated than the following contained in the statement on motion for a new trial,—to-wit:—

"The land lying easterly of the old river bank is known as 'Decker Island,' and is situated in what was the Sacramento River. At the point where this island now is, prior to the year 1853, the river extended uninterruptedly from the east bank, which was the west line of Sherman Island in the county of Sacramento, the west bank of Solano County, which was the east line of the Toland land, now the property of plaintiffs, and there was no interruption whatever in navigation in all this wide expanse of water. By 1855 the island began to appear at low tide, and was in the middle of the river or near that, with well-defined channels on each side. The island slowly increased, but the channels both remained intact, and were adequate for all purposes of navigation. After 1862 a rapid change took place, by reason of drift attaching itself to the uppermost part of the island. From

the start the island grew in a westerly direction, by reason of accretions to that side, but the channel on the west side, the west bank of which was plaintiffs' land, was up to 1867 deep and wide enough to permit the passage of large steamers through it. In that year about fifteen acres of land was visible. The island continued growing towards plaintiffs' said land,—in 1871 was half as large as now, and the channel between it and plaintiffs' said land was thirty to fifty feet wide and still navigable for scows and fishing-boats in close to the west bank, which bank had remained the same as when the island began to form. In 1872 it was two feet deep at low-water mark, but remained of considerable width and was still navigable for small sloops. There was then from fifty to seventy acres in the island, but was usually covered at high tide. The channel was finally closed to navigation, by reason of the growth of accretions to the island about the year 1877. It will thus be seen that for years after the island was first visible it was entirely disconnected from the mainland, and that between them flowed a large, deep stream of water, adequate for all the purposes of navigation for sail and steam vessels navigating the Sacramento River. Depressions the full length of the island still mark the place where the channel was, and the old western bank of the Sacramento River is still visible.

"From the time the island first appeared until it extended so as to approach the mainland, the growth or increase was never from the mainland towards the island, but always from the island toward the mainland, showing that the accretions which have been made since the island began to form have been added to it and not to the lands of plaintiffs.

"In June, 1877, the island was surveyed and located as swamp and overflowed lands, and afterwards sold to the grantors of defendants as swamp and overflowed lands.

"The evidence in the case shows the part of the land in controversy lying east of the old river-bank to have been an island as late as June, 1877, when it was surveyed and listed by the state as swamp and overflowed lands.

"The defendants are in possession of the land under a patent from the state. It is true the patent recites that the land is swamp and overflowed, while it is claimed to be tide-lands. But when the patent was issued, December, 1885, the state

had the power to alienate its tide-lands as well as its swamp and overflowed lands.''

We think, upon the foregoing facts, the court decided correctly as to the lands outside the calls of the patent. It is provided in the Civil Code (sec. 1016): ''Islands and accumulations of land, formed in the beds of streams which are navigable, belong to the state, if there is no title or prescription to the contrary.'' The island was formed in the river and belonged to the state when it was listed as swamp and overflowed lands, in June, 1877. The accretions were to the island, and not to the lands described in plaintiffs' patent. It is a familiar doctrine of the common law that the owner of land bounded by a river, being exposed to the danger of loss from its floods, is entitled to the increment which, from the same cause, may be gradually annexed to it. This upon the principle that he who bears the incidental burdens of an acquisition is entitled to its incidental advantages. Every person taking a grant of land on a river or other running stream takes the risk of losing a portion or all of his land by the action of the elements; on the other hand, he takes the chances of gaining and having added to his land by accretion the land of his neighbor. It is also elementary that if an island springs up in a navigable stream, it belongs to the sovereign, and not to the owner of the land on either of the banks of the stream. So in this case the principle is the same, whether the island existed at the time of the confirmation of the Mexican grant, or was afterwards formed in the river. If the accretions had been to plaintiffs' land, and had gradually extended to the island, the plaintiffs would have been the fortunate ones, and the accretions so added to theirs would have been theirs in law. This would have been so even if the island had been by imperceptible degrees washed away and wholly added to the lands of plaintiffs. But while the owners of the island took this chance, they also are entitled to the benefits of the new-made land added to their own and thus becoming a part of it. The question was elaborately discussed in *Benson* v. *Morrow,* 61 Mo. 347, and it was there held that if alluvion forms to an island in the Missouri River belonging to the United States, and extends thence into the stream, so as to connect with another island, belonging to a private owner, he does not thereby become the owner of the

alluvion so formed. In *Naylor* v. *Cox,* 114 Mo. 241, the question was whether land made by accretions belonged to the owner of the land on the bank of the river, or to the owner of the island, who was the plaintiff in the case. The court approved as law the following instruction: "If the land in controversy was gradually added to, and formed against Naylor's Island, and the water gradually receded from said island and ran next to the north shore, then the 'made' land between the slough and the island became part of the island, and if the defendant was in possession of any part of the land so formed, the finding should be for the plaintiff as to the part of the land so in possession of the defendant." The same principles are applied in *Fillmore* v. *Jennings,* 78 Cal. 634; *Buse* v. *Russell,* 86 Mo. 209; *Tatum* v. *City of St. Louis,* 125 Mo. 647; *Cooley* v. *Golden,* 117 Mo. 33; *Bigelow* v. *Hoover,* 85 Iowa 161[1]; Gould on Waters, 3d ed., sec. 115, and notes.

It is claimed by plaintiffs in their brief, and not controverted by defendants, that there is a strip of land of about twelve acres, consisting mostly of the old river-bank, included in the calls of the patent through which the plaintiffs deraign title, that is shown to belong to plaintiffs, and that the judgment is wrong as to this portion of the land, and should for this reason be reversed. We see no escape from this conclusion.

The complaint described the strip in connection with the land east of the fence and slough, and the court found that plaintiffs were "not the owners, nor entitled to the possession of any part of the lands described in the complaint."

If the court had found the facts as to plaintiffs' ownership, and that the defendants were not in possession of said strip, the difficulty would have been obviated. Defendants claim that the finding is immaterial, because the evidence shows that they were never in possession of the said strip. This being so, the finding is contrary to the evidence, but we cannot for this reason eliminate that part of it from the case. The issue was as to all the land described in the complaint, and the court found in favor of defendants as to all of it. If the judgment in its present form were allowed

---

[1] 39 Am. St. Rep. 296.

to stand, it would be a bar to another action by plaintiffs as to the same land in the same right.

For the reason last herein stated the judgment and order should be reversed.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Henshaw, J., Temple, J., McFarland, J.